JOHN A. CANTOR, plaintiff in error, *v.* THE PEOPLE, defendants in error.

Form of an indictment for forgery in passing a counterfeit bank bill after a previous conviction for a similar offense.

On the trial of an indictment for forgery in passing a counterfeit bill, it had been proved, without objection, that after the prisoner and B., his companion, had been arrested and brought to the station house, a boy came in and produced a roll of sixteen counterfeit bank bills, which he said B. threw away when in the company of the prisoner, while they were in custody on their way to the station house. Afterward the public prosecutor offered to put such counterfeit bank bills in evidence, but the evidence was objected to by the prisoner's counsel. *Held*, that it was still in time to object to the introduction of the bills in evidence, notwithstanding the hearsay evidence of the boy had been received without objection; and the counterfeit bills having been received in evidence, and the prisoner found guilty, the conviction was reversed and a new trial ordered.

THIS case came up on writ of error to the N. Y. General Sessions. On the 23d day of October, 1861, the prisoner was indicted in that court, in the words and figures following:

*City and County of New York, ss:*

The jurors of People of the State of New York, in and for the body of the city and county of New York, upon their oath, present:

That heretofore, to wit, at a Court of General Sessions of the Peace, holden in the city of New York, in and for the city and county of New York, on the sixth day of July, in the year of our Lord one thousand eight hundred and fifty-three, before WELCOME R. BEEBE, Esquire, city judge and justice of the said court, assigned to keep the peace of the said city and county of New York, John A. Cantor, by the name and description of Charles Day, was, in due form of law, tried and convicted of forgery upon a certain indictment then and there depending against the said John A. Cantor, by the name and description aforesaid; for that the said John A. Cantor, on the eighteenth day of June, in the year of our Lord one thousand eight hundred and fifty-three, at the city of New York, in the county of New York, aforesaid, with force and arms, feloniously had in his custody and possession, and did receive from some person or persons to the jurors aforesaid unknown, a certain false, forged and counterfeited negotiable promissory note, for the payment of money, commonly called a bank note, purporting to have been issued by a certain corporation or company, called Bank of Hallowell, duly authorized for that purpose, by the laws of the State of Maine, which said last mentioned false, forged and negotiable promissory note, for the payment of money, is as follows, that is to say :

"2.          No.          2.

*The President, Directors and Company of the* BANK OF HAL-LOWELL *promise to pay* TWO DOLLARS *to S. Ford, or bearer, on demand.*

Hallowell, April 1, 1853.

Two.          A. LEONARD, *Pres't.*    Two

    A. S. WASHBURN, *Cash.*

State of Maine."

Cantor *v.* The People.

With intention to utter and pass the same as true, and to permit, cause and procure the same to be so uttered and passed, with the intent to injure and defraud one John Lawitz and divers other persons to the jurors aforesaid unknown, he, the said John A. Cantor, then and there well knowing the said last mentioned false, forged and counterfeited promissory note, for the payment of money, to be false, forged and counterfeit, as aforesaid, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity; and, therefore, it was considered by the said court then, that the said John A. Cantor, otherwise called Charles Day, should be imprisoned in the State prison for the term of eight years, as by the record thereof doth more fully appear. And the jurors aforesaid, now here sworn upon their oath aforesaid, do further present, that the said John A. Cantor, otherwise called Charles Day, having been so convicted of forgery, and having been duly discharged and remitted of such judgment and conviction, afterward, to wit, on the 20th day of July, in the year 1861, with force and arms, at the ward, city and county aforesaid, feloniously had in his possession a certain forged and counterfeited negotiable promissory note, for the payment of money, commonly called a bank note, purporting to have been issued by a certain corporation or company called The Mechanics' Bank, duly authorized for that purpose, by the laws of the State of Connecticut, which said last mentioned forged and counterfeited negotiable promissory note, for the payment of money, is as follows, that is to say:

---

"5.     No. 1198.     5.

THE MECHANICS' BANK,

STATE OF CONNECTICUT,

*Promise to pay five dollars to the bearer, on demand.*

New Haven, Dec. 8, 1858.

V.        JNO. W. FITCH, *Pres't.*

GEO. B. CURTISS, *Cash.*"

---

With intention to utter and pass the same as true, and to permit, cause and procure the same to be so-uttered and passed with the intent to injure and defraud one Bernard Sweeny and divers other persons to the jurors aforesaid unknown, he, the said John A. Cantor, otherwise called Charles Day, then and there well knowing the said last mentioned forged and counterfeited promissory note, for the payment of money, to be forged and counterfeited as aforesaid, against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

NELSON J. WATERBURY, *District Attorney.*

On the 12th day of November, 1861, the defendant was arraigned in said court on said indictment, and pleaded not guilty.

The issue so joined came on to be tried on the nineteenth day of November, 1861, in said court, before JOHN H. McCUNN, city judge, and a jury.

*Barnard Sweeny* was called as a witness on behalf of the prosecution, and testified as follows: On the 20th day of July, 1861, I lived at 277 Division street; I saw defendant there in the liquor store which I attended; another man named Burns came in with him; it was in the evening; they called for two milk punches and two segars, and defendant gave in payment a five dollar bill on the Mechanics' Bank, New Haven, Connecticut; I gave him four dollars and seventy cents in change, retaining thirty cents for the drinks and segars. (A bank bill was here shown to witness.)

*Q.* Is that the bill?

*A.* I think it is; I wrote my name on it; these two parties were in there eight or ten minutes; as soon as they went out police officer O'Rourke came in and asked me if they (defendant and Burns) had passed any bill there; defendant was not present; I showed the officer the bill; he said it was bad; he took the bill and went after the prisoner; all this occurred within a minute or two after they went out; this was about eight o'clock in the evening.

Cantor v. The People.

*Cross-examined:* It was on a Saturday night; the parties did not appear as if they had been drinking; when I took the bill I put it in the drawer; I had other bills in the drawer, but no others of the denomination of five dollars; when defendant and Burns left, they had hardly time to cross the street when O'Rourke and the other officer came in, and I gave them the bill; I was not present at the examination of the defendant before the police Magistrate.

The district attorney hereupon read in evidence a certificate of Henry Vandervoort, clerk of said Court of General Sessions, in the words and figures following:

" At a Court of General Sessions of the Peace, holden in and for the city and county of New York, at the city hall of said city, on Wednesday, the 26th day of July, in the year of our Lord one thousand eight hundred and fifty-three:

*Present*—The Honorable WELCOME R. BEEBE, City Judge of the city of New York, Justice of the Sessions.

| The People of the State of New York v. Charles Day, *alias* John A. Cantor. | On conviction, by verdict, of forgery in the second degree. |
| --- | --- |

Whereupon it is ordered and adjudged by the court, that the said Charles Day, alias John A. Cantor, for the felony aforesaid whereof he is convicted, be imprisoned in the State prison at hard labor for the term of eight years.

A true extract from the minutes.

HENRY VANDERVOORT, *Clerk.*"

*Bernard O'Rourke* was called as a witness on behalf of the prosecution, and, after being duly sworn, testified as follows: I am a police officer; I arrested the defendant on the evening of the 20th of July last; I went to the place of the last witness (Sweeny), and inquired if the defendant had passed any bill there; Sweeny said he had; I got a five dollar bill and took it to the station house; Sweeny came up and marked it at the station house; I put it in my pocket; it was the same bill

I got from him; I saw him mark it; he wrote his name on it. (The bill was here shown witness.) That is it; on Saturday evening I was on duty in Division street; my attention was called to a crowd in front of the grocery store; I saw Rutzky come out of there; I thought there was a quarrel; there was no noise there; I saw a girl cross over; my attention was called to her; I saw defendant come out of Rutzky's clothing store and go down Division street on the Seventh ward side; Rutzky had been to Bohde's grocery store; I followed defendant ten or twelve blocks, and into the house No. 277 Division street; he was alone; he remained there forty or forty-five minutes; I was watching with another officer outside; I went over into the house, but could not see him; I came back to where I started from, and after having waited forty or forty-five minutes he made his appearance in company with Frank Burns; the house defendant went in was not Sweeny's place; I am not sure about the number of the house; this was the house where Burns lived; Burns' house is three or four blocks this side of Sweeny's liquor store; defendant went two or three streets up and into Sweeny's liquor store; defendant and Burns went in together; I and the other officer stood on the other side, watching them; we could see all their movements; I saw defendant put his hand in his pocket to pay for the drinks; the minute defendant and Burns came out of Sweeny's, I went in; Sweeny was the only person in the store; I asked him what money he had received from those two men; he replied, a five dollar bill; I said, "Are you sure it is a good bill?" I told him the bill was bad; I took the bill and followed defendant and Burns until I met officer Van Duzer, and we arrested them and took them to the Thirteenth ward station house; I took the bill out of my pocket and gave it to the captain; Van Duzer searched defendant; he had the money he received from Sweeny, a three dollar bill, a one dollar bill, and seventy cents in silver; I think defendant said that was the money he received for a five dollar bill he gave Sweeny; Van Duzer also found on defendant four tens (good money) done up in small bits of paper; the captain asked him where

Cantor *v.* The People.

he got the money; he said he got it down town from some friends; we searched him thoroughly, but found no more there; he evaded all questions; he said he was born nowhere; captain Steers desired me and Van Duzer to take them in the back room; we did so; I then searched defendant, and in his left fob pocket of his pantaloons I found one dollar in gold, two half dollars and two or three ten cent pieces, a five cent piece, I think, amounting in all to about two dollars and twenty-five cents; found no more on his person; I searched him thoroughly; found nothing on Burns; a boy belonging to some regiment brought in a roll of bills which he had picked up; he brought it in while I was searching defendant; he said he picked it up in the street; he said one of the prisoners threw it away; he said he was not positive which one it was, but thought it was the big man (Burns); I took Burns, and Van Duzer took defendant, to station house.

The district attorney hereupon put to the witness the following question:

"On the way to the station house, did you observe Burns do or say anything, and, if so, what?"

The counsel for defendant objected to this question. The court overruled the objection, and allowed the question to be put; to which decision counsel for defendant excepted.

The witness answered: "He put both his hands in his pockets, one in his pantaloons and the other in his coat pocket; I saw him make a motion as if to throw away a segar; I afterwards saw the segar in his mouth."

The district attorney here proposed to give in evidence the declarations of Burns in the presence of defendant. Counsel for defendant objected. The court overruled the objection, and allowed the evidence to be given; to which counsel for defendant excepted:

"Burns asked me what he was arrested for? what he had done? I told him if he would go to the station house he could find out. I found nothing on Burns, on searching him. All the money was found on defendant."

The district attorney hereupon handed to the witness some

sixteen bank bills, which were admitted to be counterfeit, and asked the witness the following question:

"State if this is the money that was brought in the station house by the boy?"

The counsel for the defendant objected to the question. The court overruled the objection, and allowed the question to be answered; to which counsel for defendant excepted.

The witness thereupon answered: "This is it; it was rolled up in this tin foil."

The district attorney hereupon put in evidence the five dollar bank bill which the witness Sweeny testified that defendant passed upon him on the evening of the 20th of July, 1861, which was admitted by the defendant's counsel to be counterfeit; which bill is the same described in the indictment.

*Cross-examined:* From Rutzky's to Sweeny's is about ten or eleven blocks; Rutzky's is 97 Division street; Burns' place is about three blocks from Sweeny's; Rutzky's is near Allen street; Sweeny's place is corner Governor and Division streets; I saw Rutzky when he came out of the grocery store; I knew he went to the grocery store to see if the bill was good; he told me so afterward; he said he went to see if the bill was good; after I arrested defendant I spoke to Rutzky about the bill; until then I never spoke a word to him about a counterfeit bill; I spoke to Rutzky about it for the first time that night immediately after arrest was made, in his own house; defendant was then locked up; no officer spoke to Rutzky about counterfeit bills in my presence; Rutzky had spoken to my side partner about it; Matt. Keough, or Keoll, was my side partner then; I did not see Burns throw away any roll of bills; I saw him throw something away; it was not a segar; we were then five or six blocks from the station house; boy came in with the roll three or five minutes after us; when Burns threw something away there was a crowd around us, two or three dozen persons or more; I was present when the boy gave in his testimony; he told Judge Steers distinctly, and swore to it, that Burns threw it away; he stated no differently to me; I don't know that Rutzky was told not to tell

defendant the bill was bad; I never heard of any such plan; never heard it spoken of from time I saw Rutzky come out of the grocery store; I and the other officer watched the defendant; I don't know the other officer's name; I am sure defendant waited in Burns' thirty or forty minutes at least; I did not look at watch; I could form an opinion; I saw the defendant come out of Rutzky's place; he went right down to Burns' place; Burns' place is on same side as Rutzky's, and is between Rutzky's and Sweeny's, but nearer to Sweeny's.

The prisoner's counsel admitted the existence of the bank, as a corporation, by which the bill passed to Sweeny purported to have been issued, and that such bill was counterfeit.

After other evidence had been given, the district attorney proposed to put in evidence the sixteen counterfeit bank bills identified by the witness O'Rourke as those brought to the station house by the boy. Counsel for defendant objected to the introduction of such bills in evidence. The court over-ruled the objection, and allowed the bills to be put in evidence, to which the counsel for the defendant excepted. The bills were thereupon read in evidence. The sixteen bills were each and all five dollar bills, on the same bank, and same date, as the counterfeit bill described in the indictment, and were all put in evidence. The defendant's counsel admitted the former conviction, sentence and imprisonment, and expiration of sentence, of defendant, as described in the indictment. The prosecution here rested.

After evidence had been given on the part of the defense, the court charged the jury that it was a question of fact for them to decide, upon the evidence, whether the *scienter* was proved. To which the counsel for the defendant excepted.

The jury rendered a verdict of guilty, and the case was then brought into the Supreme Court.

*Henry L. Clinton*, for plaintiff in error.

I. The court below erred in permitting the sixteen bills, alleged to have been brought into the station house by the boy, on the night of the arrest of defendant, to be introduced in evidence.

1. If these bills were thrown away by Burns (and there was some testimony tending to show this), what he did after the counterfeit bill had been passed could not bind the defendant, nor was it admissible in evidence against him; although where two or more are jointly engaged in the commission of a crime, the acts of any one (after the concert of action between them is proved) may be given in evidence against the others, yet, *after* a crime is committed, the acts or declarations of any one are not evidence against the others. Wharton, in his American Criminal Law (4*th ed.*, § 703), correctly states the rule as follows: "When, however, the common enterprise is at an end, whether by accomplishment or abandonment, it is not material, no one is permitted, by any subsequent act or declaration of his own, to affect the others." * * * * * * "Thus, on an indictment against A. for concealing a horse thief, knowing him to be such, *it is not competent for the prosecution to give evidence of what the alleged horse thief subsequently confessed in the presence of A., to establish the fact that a horse was stolen.*" Clearly, anything Burns might have said, or any act of his, such as throwing away a roll of counterfeit bills after the offense in question had been committed, could not be evidence against the defendant.

2. There was no proof, but *hearsay*, that the boy had picked up these bills at all, and brought them to the station house. The only proof adduced by the prosecution, on the subject of these sixteen counterfeit bills, before introducing them in evidence, was that the boy said he picked them up, and that one of the prisoners (Burns) had thrown them away. Clearly, the only way to prove that fact (if it were competent evidence) was to call the boy as a witness on the trial. Certainly, it cannot be necessary to cite authorities to show that *hearsay* is not evidence.

II. The prosecution failed to prove the *scienter* or guilty knowledge. The court below erred in refusing so to charge the jury. All the authorities agree that, in a case of this kind, it is incumbent on the prosecution to prove *guilty knowledge.*

Cantor *v.* The People.

"Where the prisoner is charged with uttering or putting off a forged instrument, knowing it to be forged, *evidence of that guilty knowledge must be given* on the part of the prosecution, and, for that purpose, the uttering or having possession of similar forgeries will be admissible." (*Roscoe's Crim.: Ev.,* p. 515.)

"It has already been observed, that the publication of the forged instrument, with *knowledge* of the fact, is made a substantive offense by most of the statutes which relate to forgeries, and in cases of this kind, the knowledge of the fact, or, as it is frequently termed, the *guilty knowledge, becomes a material part of the evidence.*" (2 *Russell on Crimes,* 403.)

"Well knowing the same to be forged," &c. This is not capable of direct proof. It is nearly in all cases, therefore, proved by evidence of facts, from which the jury may presume it. Upon an indictment for disposing of and putting away a forged bank note, knowing it to be forged, proof that the defendant has passed other forged notes, if proved by legitimate evidence, raises a probable presumption that he knew the note, for the passing of which he is now indicted, to be forged." (*Arch. Cr. Pl.,* 366.)

*S. B. Garvin,* for defendants in error.

The sixteen bills were properly proved and received in evidence, it being proved, without objection, that the money was thrown away by Burns, a confederate with Cantor.

The charge was right and proper in all respects, and sentence should be affirmed.

*By the Court,* ROSEKRANS, J. The declaration of the person who brought to the officer who arrested and searched the defendant, the sixteen bills which were offered in evidence by the public prosecutor, that the prisoner had thrown away the bills, and that the person who made the declaration picked them up, was merely hearsay evidence, and did not establish the fact which he alleged. Although such declarations were admitted without objection on the part of the prisoner, his

subsequent objection to the introduction of the bills in evidence; and to proof that they were the bills said to have been picked up by the person who made the declaration, was proper and timely, and should have been sustained. These bills, in connection with proof that they were counterfeit, furnished the principal evidence of knowledge by the prisoner that the bill passed by him was counterfeit, and thus effected his conviction.

For these reasons the conviction should be reversed, and the case remanded to the Court of General Sessions for a new trial.

A new trial granted.